**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-2618
_____

UNITED STATES OF AMERICA

v.

GILBERTO ARANA WENCE,
Appellant

_____

On Appeal from the District Court of the Virgin Islands
District Court No. 3:20-cr-00027-001
The Honorable Robert A. Molloy, Chief District Judge

_____

Argued May 24, 2023
_____

Before: RESTREPO, McKEE, and SMITH *Circuit Judges*

(Opinion filed:  September 6, 2023)

Scott A.C. Meisler, Esq. **[ARGUED]**
United States Department of Justice
Appellate Section
950 Pennsylvania Avenue NW
Washington, DC 20530

Adam Sleeper, Esq.
Office of United States Attorney
5500 Veterans Drive
United States Courthouse, Suite 260
St. Thomas, VI 00802
*Counsel for Appellee*

Matthew A. Campbell, Esq.
Office of Federal Public Defender
1336 Beltjen Road
Suite 202, Tunick Building
St. Thomas, VI 00802

Erwin Chemerinsky, Esq. **[ARGUED]**
University of California at Berkeley
School of Law
215 Boalt Hall
Berkeley, CA 94720
*Counsel for Appellant*

Michele A. McKenzie, Esq.
McKenzie Scott
1350 Columbia Street
Suite 600
San Diego, CA  92101

Philip L. Torrey, Esq.
Harvard Law School
6 Everett Street
Suite 3106
Cambridge, MA  02138

Yaman Salahi, Esq.
Edelson
150 California Street
18th Floor
San Francisco, CA  94111

Max S. Wolson, Esq.
National Immigration Law Center
P.O. Box 34573
Washington, DC  20043

Khaled Alrabe, Esq.
National Immigration Project of National Lawyers Guild
2201 Wisconsin Avenue NW
Suite 200
Washington, DC  20007

Alexia Korberg, Esq.
Paul McCusker, Esq.
Paul Weiss Rifkind Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019

Amanda Valerio-Esene
Paul Weiss Rifkind Wharton & Garrison
2001 K Street NW
Washington, DC 20006
*Counsel for Amicus Appellants*

————————————————

OPINION[*]

————————————————

McKEE, *Circuit Judge.*

Appellant Gilberto Arana Wence was indicted for illegally reentering the United States following a prior removal, in violation of 8 U.S.C. § 1326(a). He moved to dismiss the indictment on the ground that Section 1326 violates the Fifth Amendment's equal protection guarantee and is therefore facially invalid. After the District Court dismissed Wence's motion, he filed this appeal. For the reasons that follow, we will affirm.

**I.**[1]

———————————————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] This Court has jurisdiction under 28 U.S.C. § 1291. The district court had jurisdiction under 18 U.S.C. § 3231 and 48 U.S.C. § 1612.

We review challenges to the constitutionality of a criminal statute de novo.[2] We apply a clear error standard, however, to the District Court's factual findings, which "are not subject to plenary review simply because they are material to constitutional analyses."[3]

## II.

Gilberto Arana Wence, a citizen of Mexico, relied upon *Village of Arlington Heights v. Metropolitan Housing Development Corporation*,[4] to argue his conviction for illegal reentry in violation of 8 U.S.C. § 1326(a), is unconstitutional because it violates the Equal Protection Clause of the Fifth Amendment. In moving to dismiss the indictment on those grounds, Wence contended that Section 1326 was enacted with the intent to discriminate against Mexican citizens and has consequently disparately impacted Mexican and Latin American nationals. The District Court disagreed and dismissed Wence's motion.

## III.

Just days before we heard argument in this case, the Court of Appeals for the Ninth Circuit thoroughly addressed the identical issue in *United States v. Carrillo-Lopez*.[5] There, Mexican national Gustavo Carrillo-Lopez moved to dismiss his indictment under Section 1326 on the ground that the statute violated the Equal

---

[2] *United States v. Hoffert*, 949 F.3d 782, 787 (3d Cir. 2020).
[3] *United States v. Menendez*, 831 F.3d 155, 164 (3d Cir. 2016) (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 510 (1984)).
[4] 429 U.S. 252 (1977).
[5] 68 F.4th at 1133 (9th Cir. 2023).

4

Protection Clause of the Fifth Amendment.[6] Concluding that Carrillo-Lopez had not established that the Section 1326 was enacted with discriminatory intent towards Mexicans and other Latin Americans, the Court reversed the District Court's dismissal of the indictment. We substantially agree with the reasoning and analysis of the Ninth Circuit.[7]

Before reaching its conclusion, the Ninth Circuit analyzed the applicable standard of review. The government argued, as it does here, that the *Arlington Heights* framework was inapplicable to Section 1326 because courts should defer to the political branches on immigration matters.[8] Noting that the Supreme Court has not directly addressed which standard of review applies to equal protection challenges to immigration laws, the Ninth Circuit decided that it need not answer this question because Carrillo-Lopez's equal protection challenge failed even under the less deferential *Arlington Heights* test.[9]

---

[6] *Id.* at 1137.

[7] In agreeing with the Ninth Circuit, we are neither insensitive to the forceful arguments tying Section 1326 to racist objectives, nor do we turn a blind eye to the extent to which racism's pernicious tentacles have maintained an unrelenting grip on this country's history and lawmaking. We do not, therefore, lightly dismiss the *Carrillo-Lopez* District Court's thoughtful historical analysis of Section 1326. *See U.S. v. Carrillo-Lopez*, 555 F. Supp. 3d 996 1009–19 (D. Nev. 2021). However, for the reasons set forth by the Court of Appeals, which we briefly summarize here, we are persuaded that, despite the nation's racist history, Wence has not satisfied his burden of establishing that the racist stain of the original enactment of the challenged provision continued to taint Section 1326, after it was reenacted in 1952.

[8] 68 F.4th at 1141–43.

[9] *Id.* at 1142. In *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, the Supreme Court examined whether the Village's denial of a rezoning application (to go from single-family to multi-family housing) violated the Fourteenth Amendment. Although the Court ultimately held that it did not, it also recognized that an equal protection claim exists when a facially neutral law or policy is motivated by

The Ninth Circuit, concluding that Section 1326 is facially neutral as to race, then examined the statute under this test.[10] It began with an examination of the history of Section 1326, which was enacted as part of Immigration and Nationality Act in 1952.[11] The Court considered (1) a 1950 U.S. Senate Report analyzing the state of pre-INA immigration law, (2) President Harry Truman's veto of the INA, and (3) the Department of Justice's use of the derogatory term "wetback" in a letter commenting on the INA.[12] The Court determined that the Senate Report offered no evidence of discriminatory intent against Latin Americans because it merely provided factual information about Mexican and Latin American immigrants, along with all other "races and peoples."[13] It further

---

discriminatory intent and has a racially discriminatory impact. To assert such a claim, "[p]roof of racially discriminatory intent or purpose is required." *Id*. at 265. But discrimination need not be the sole intent, just "a motivating factor in the decision." *Id.* at 265–66.

 The Court outlined a series of factors that could serve as evidence of discriminatory intent. Disparate impact on one race could "provide an important starting point." *Id.* at 266. "Sometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action." *Id.*

 If the pattern is not stark, "impact alone is not determinative, and the Court must look to other evidence." *Id.* Other sources of evidence include "the historical background of the decision … particularly if it reveals a series of official actions taken for invidious purposes." *Id.* at 267. Courts should look to the "specific sequence of events leading up to the challenged decision [which] also may shed some light on the decisionmaker's purposes." *Id.* "Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role." *Id.* Finally, the Court advised that "legislative or administrative history may be highly relevant, especially where there are contemporary statements by members of the decision-making body, minutes of its meetings, or reports." *Id.* at 268. These factors, the Court asserted, were not exhaustive but were "subjects of proper inquiry in determining whether racially discriminatory intent existed." *Id.*

[10] *Id.* at 1143.
[11] *Id.* at 1143–51.
[12] *Id.*
[13] *Id.* at 1148.

noted that President Truman's veto was motivated by his opposition to the INA's national-origin quota system, so it shed no light on Congress's intent in enacting Section 1326, an unrelated provision.[14] Finally, the Court held that the Justice Department's use of an offensive term did not provide insight into Congress's intent.[15]

The Ninth Circuit also considered Carrillo-Lopez's argument that Section 1326 has disparately impacted Mexican and Latin American immigrants.[16] The Court held that Carrillo-Lopez failed to provide direct evidence of disparate impact, and even if he had, he still could not carry his burden because there was a clear geographic reason for any disproportionate impact.[17] That is, Latin Americans re-enter in greater numbers because they are geographically closer to the U.S. border than other immigrants.[18]

Finally, the Court emphasized that the 1952 Congress was entitled to a "strong 'presumption of good faith.'"[19] Given that presumption—and the less-than-conclusive historical considerations and disparate impact evidence—the Ninth Circuit held that Carrillo-Lopez had not satisfied his burden of proving that Congress enacted Section 1326 with discriminatory animus against Mexican and Latin American immigrants.[20]

---

[14] *Id.*
[15] *Id.* at 1149.
[16] *Id.* at 1151–53.
[17] *Id.* at 1153.
[18] *Id.*
[19] *Id.* (citing *Miller v. Johnson*, 515 U.S. 900, 916 (1995)).
[20] *Id.* at 1154.

We face substantially identical questions and arguments here as the Ninth Circuit in *U.S. v. Carrillo-Lopez*.[21] Finding our sister Circuit's reasoning thorough and persuasive, we adopt it here. We also agree that, because Wence's claim fails under *Arlington Heights*, we need not decide which standard of review applies to equal protection challenges to immigration laws.

**IV.**

For the reasons described above, we therefore will affirm the District Court.

---

[21] We note that this appeal was argued forcefully and exceptionally well by the same two attorneys—Dean Erwin Chemerinsky for Appellant and Scott A.C. Meisler for Appellee—who argued before the Ninth Circuit in *Carrillo-Lopez*.